JUDGE GRIESA

12 CIV 1866

PREET BHARARA
United States Attorney for the
Southern District of New York
By:   ANDREW D. GOLDSTEIN
       HOWARD S. MASTER
       SHARON COHEN LEVIN
One St. Andrew's Plaza
New York, New York 10007
(212) 637-1559



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :

UNITED STATES OF AMERICA           :

       - v -                 :

                         :    12 Civ.

ALL FUNDS AND OTHER PROPERTY ON
DEPOSIT IN THE NINETEEN BANK     :
ACCOUNTS LISTED ON ATTACHMENT A,          VERIFIED COMPLAINT
AND ALL PROPERTY TRACEABLE     :
THERETO,

                         :

and                         :

ALL RIGHT, TITLE AND INTEREST
IN THE SEVEN PIECES OF REAL     :
PROPERTY LISTED IN ATTACHMENT B,
WITH ALL IMPROVEMENTS,     :
ATTACHMENTS AND EASEMENTS
THEREON,                   :

              Defendants-in-rem.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff, United States of America, by its attorney, Preet Bharara, United States

Attorney for the Southern District of New York, for its verified complaint alleges, upon

information and belief, as follows:

## NATURE OF THE ACTION

1.    This is an action by the United States of America seeking forfeiture of all right, title and interest in all funds and other property deposited in the bank accounts, and all property traceable thereto, listed in on Attachment A (collectively, the "DEFENDANT BANK ACCOUNTS"), and all right, title and interest in the seven pieces of real property, with all improvements, attachments and easements thereon, listed in on Attachment B (collectively, the "DEFENDANT PROPERTIES").  As set forth below, each of the DEFENDANT BANK ACCOUNTS and DEFENDANT PROPERTIES are associated with a scheme by Reddy Allen, Padma Allen, and their company, Technodyne LLC ("Technodyne"), along with others, to defraud the City of New York out of hundreds of millions of dollars, to pay bribes and kickbacks, and to launder the proceeds of the scheme by, among other means, wiring money through multiple bank accounts in the United States and India.

2.    The DEFENDANT BANK ACCOUNTS, which have been frozen and contain a total of approximately $4.7 million, and the DEFENDANT PROPERTIES, which have an approximate market value of more than $6.8 million, are subject to forfeiture pursuant to 18 U.S.C. §§ 981 (a)(1)(C) and (a)(1)(D), as property derived, directly or indirectly, from gross proceeds traceable to the commission of fraud offenses in violation of 18 U.S.C. §§ 1343 and 1349, bribery offenses in violation of 18 U.S.C. § 666, and Travel Act offenses in violation of 18 U.S.C. § 1952, and as property derived, directly or indirectly, from gross proceeds traceable to the commission of money laundering offenses in violation of 18 U.S.C. §§ 1956 and 1957.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

4.      Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of New York.

## PROBABLE CAUSE FOR FORFEITURE

5.      Over the course of more than ten years, the City of New York (the "City") developed and implemented an information technology initiative called the CityTime Project ("CityTime") that was intended to modernize the payroll and timekeeping system for more than 100,000 City employees.  CityTime was originally budgeted to cost the City $63 million to complete, but, in fact, has cost the City more than $600 million to date.

6.      The primary contractor employed by the City to develop and implement CityTime was Science Applications International Corporation ("SAIC").  Starting in 2003, SAIC employed Gerard Denault as its "Program Manager" on CityTime.  Among other things, Denault was responsible for selecting and overseeing subcontractors hired by SAIC to assist with CityTime, submitting bills to the City seeking payment for work purportedly performed by SAIC employees and subcontractors on CityTime, and developing proposed CityTime work orders and contract amendments seeking approval for SAIC to perform additional work on CityTime.  Carl Bell worked as Chief Systems Engineer in the New York office of SAIC from 2003 up to 2011.

7.      Technodyne is a private consulting company based in New Jersey that is wholly owned by Reddy Allen and Padma Allen.  Reddy Allen served as Chief Executive Officer of Technodyne, and Padma Allen served as Chief Financial Officer of Technodyne.

8.      Starting in 2003, Technodyne became the primary subcontractor employed by SAIC to provide staffing services on CityTime.  Between 2003 and 2011, SAIC paid Technodyne approximately $325 million in connection with CityTime – an amount that represented more than 80% of Technodyne's revenues during that time period.

3

9. Technodyne secured its work on CityTime by, among other things, agreeing to pay illegal kickbacks to Denault and Bell, and agreeing to facilitate the payment of illegal kickbacks to Mark Mazer ("Mazer"), who served as an agent, manager and representative of the City in connection with the CityTime project. Specifically, starting in or about 2003, when Technodyne was first hired to provide staffing services for SAIC, Reddy Allen, Padma Allen, and Technodyne agreed to secretly pay Denault and Bell $5 each for every hour worked by every consultant hired by or through Technodyne to work on CityTime. At Denault's recommendation, SAIC in turn hired and retained Technodyne as a "single source" contractor, meaning that Technodyne did not have to engage in a competitive bidding process to win the contract with SAIC, nor did Technodyne have to engage in a competitive bidding process to be awarded additional CityTime business by SAIC.

10. Reddy Allen and Padma Allen devised a scheme to launder the secret kickbacks through a series of bank accounts and payments to and from entities related to Technodyne that were based in India. Specifically, Reddy Allen, Padma Allen, and Technodyne wired more than $40 million that Technodyne had obtained from SAIC for its work on CityTime to bank accounts in India in the name of two companies affiliated with the Allens: McCreade Software Asia Pvt. Ltd. ("McCreade") and Srihari Exports Pvt. Ltd. ("Srihari"). Technodyne also wired more than $12 million to a U.S. company called Kaveri International Inc. ("Kaveri") that they effectively controlled, which in turn wired more than $2 million to McCreade and Srihari in India. McCreade, Srihari and Kaveri are each held in the name of Padma Allen's mother, Soundaria Chennareddy, a/k/a "Soundaryama Chennareddy," a/k/a "Soundarya Raghu" ("Chennareddy"), and McCreade and Srihari are located at the same address in Bangalore, India. Of the funds that went to the Indian bank accounts, approximately $15 million was in turn paid

in secret kickbacks to bank accounts and/or shell entities in the United States set up and controlled by Denault and Bell, or paid in taxes on those kickbacks. The bank account held by Denault was called MKG Consulting ("MKG"), and the shell entity created by Bell was called 3C Enterprises LLC ("3C"). The kickbacks were disguised on many of the wire transfers as payments for "Consulting Services."

11.    At the behest of Denault and Mazer, and in order to continue receiving work on CityTime, in or about 2005 and 2006, Technodyne hired two sub-subcontractors – D.A. Solutions, Inc. ("DAS") and Prime View, Inc. ("Prime View") – to provide additional staffing services for the project. DAS and Prime View in turned paid tens of millions of dollars in additional kickbacks to Mazer.

12.    In order to receive and to continue receiving payments of millions of dollars related to CityTime, Reddy Allen, Padma Allen, Denault, Mazer and others made material misrepresentations and material omissions to the City in order to cause the City to spend significantly more money than necessary on CityTime. Among other things, they defrauded the City into hiring consultants not needed to complete the project, inflated the rates charged for work performed by certain consultants, inflated the hours worked by certain consultants, and artificially delayed the implementation of the project.

13.    When Reddy Allen and Padma Allen learned of the Government's investigation into Technodyne and its related entities, they took steps to obstruct justice. They manufactured a false story of how the kickbacks came to be paid, and they made or caused to be made false statements to federal investigators examining their conduct. They then fled to India and took steps to shut down Technodyne's U.S. operations.

14.     On June 15, 2011, a grand jury issued a Superseding Indictment charging nine defendants, including Reddy Allen, Padma Allen and Technodyne, with offenses including conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k) (the "Superseding Indictment"). Reddy Allen, Padma Allen and Technodyne have not appeared to answer the charges set forth in the Superseding Indictment. Upon information and belief, including communications with counsel retained by Reddy Allen and Padma Allen, Reddy Allen and Padma Allen are aware of the charges against them and they remain in India in an effort to avoid prosecution on the charges.   They are considered fugitives.

15.     In connection with the fraud, kickback and money laundering schemes described above, Reddy Allen, Padma Allen, Technodyne and others opened and used numerous bank accounts in the United States to deposit and process their illicit proceeds, including the DEFENDANT BANK ACCOUNTS, and purchased or otherwise paid for multiple properties using proceeds of the fraud, kickback, and laundering schemes, including the DEFENDANT PROPERTIES, as set forth below.

## THE DEFENDANT BANK ACCOUNTS

### I. Accounts at Bank of America

1. **ACCOUNT NUMBER 4729004400, HELD IN THE NAME OF TECHNODYNE LLC (the "BoA 4400 Account")**

16.     On or about April 20, 2011, pursuant to a request from the U.S. Attorney's Office ("USAO"), officials at Bank of America froze the assets in the BoA 4400 Account, which is held in the name of TECHNODYNE LLC. As of that date, the balance in the account, according to a representative of Bank of America, was $1,878,140.64.

17.    The BoA 4400 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

a.    From in or about January 2004 through in or about October 2004, the BoA 4400 Account received more than $10.8 million from accounts at SAIC.

b.    From in or about May 2004 through in or about January 2005, more than $2 million was wired from the BoA 4400 Account, through approximately 25 separate wire transfers, to a bank account in India held by McCreade.

c.    From in or about July 2004 through in or about September 2004, approximately $77,000 was transferred from the BoA 4400 Account to a bank account held by Impact Business Technology Group LLC ("Impact"), a company that, upon information and belief, is owned by Chennareddy and controlled by Reddy Allen and Padma Allen.

d.    From in or about January 2004 through in or about January 2005, more than $850,000 was transferred from the BoA 4400 Account to a bank account held by Kaveri.

e.    In or about October 2004, approximately $50,000 was transferred from the BoA 4400 Account to a bank account in India held by Srihari.

f.    From in or about October 2006 through in or about February 2008, more than $2.6 million was transferred from the BoA 4400 Account to accounts held by DAS.

g.    From in or about October 2006 through in or about January 2008, more than $1 million was transferred from the BoA 4400 Account to accounts held by Prime View.

## 2. ACCOUNT NUMBER 9505241812, HELD IN THE NAME OF TECHNODYNE LLC (the "BoA 1812 Account")

18.     On or about May 26, 2011, pursuant to a request from the USAO, officials at Bank of America froze the assets in the BoA 1812 Account, which is held in the name of TECHNODYNE LLC.  As of that date, the balance in the account, according to a representative of Bank of America, was $493,275.86.

19.     The BoA 1812 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

a.     From in or about December 2004 through in or about March 2011, the BoA 1812 Account received more than $11 million from accounts at SAIC.

b.     From in or about February 2005 through in or about July 2005, more than $1.2 million was wired from the BoA 1812 Account, through approximately 11 separate wire transfers, to a bank account in India held by McCreade.

c.     From in or about December 2004 through in or about December 2006, more than $340,000 was transferred from the BoA 1812 Account to a bank account held by Impact.

d.     From in or about November 2004 through in or about May 2008, more than $1.7 million was transferred from the BoA 1812 Account to a bank account held by Kaveri.

e.     From in or about March 2005 through in or about November 2008, more than $3 million was transferred from the BoA 4400 Account to accounts held by DAS.

8

### 3. ACCOUNT NUMBER 9505241820, HELD IN THE NAME OF TECHNODYNE LLC (the "BoA 1820 Account")

20.    On or about May 26, 2011, pursuant to a request from the USAO, officials at Bank of America froze the assets in the BoA 1820 Account, which is held in the name of TECHNODYNE LLC. As of that date, the balance in the account, according to a representative of Bank of America, was $2,986.19.

21.    The BoA 1820 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment. Facilitating transactions include the following:

a.    From in or about October 2004 through in or about April 2009, the BoA 1820 Account received more than $3.8 million from the BoA 4400 Account.

b.    From in or about November 2004 through in or about March 2011, the BoA 1820 Account received more than $6.1 million from the BoA 1812 Account.

c.    In or about September 2005, the BoA 1820 Account received approximately $12,000 from McCreade.

d.    From in or about October 2005 through in or about August 2010, more than $200,000 was transferred from the BoA 1820 Account to a bank account held by Impact.

e.    From in or about May 2006 through in or about July 2010, approximately $315,000 was transferred from the BoA 1820 Account to a bank account held by Kaveri.

   f. In or about February 2009, approximately $5,000 was transferred from the BoA 1812 Account to an account at the State Bank of India held in the name of Technodyne LLC (the "State Bank of India 0001 Account," referenced below).

   g. From in or about July 2010 through in or about August 2010, approximately $800,000 was transferred from the BoA 1812 Account to close relatives of Reddy Allen, of which approximately $750,000 was used for construction on the 6 Ariel Court Property, referenced below.

**4. ACCOUNT NUMBER 9476948965, HELD IN THE NAME OF TECHNODYNE LLC (the "BoA 8965 Account")**

  22. On or about May 26, 2011, pursuant to a request from the USAO, officials at Bank of America froze the assets in the BoA 8965 Account, which is held in the name of TECHNODYNE LLC.  As of that date, the balance in the account, according to a representative of Bank of America, was $964.41.

  23. The BoA 8965 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

   a. From in or about October 2004 through in or about November 2004, the BoA 8965 Account received more than $1.6 million from SAIC.

   b. From in or about January 2004 through in or about October 2004, the BoA 8965 Account received more than $7 million from the BoA 4400 Account, and from in or about January 2004 through in or about March 2005, more than $5.2 million was transferred back from the BoA 8965 Account to the BoA 4400 Account.

c.      From in or about October 2004 through in or about September 2005, more than $6.4 million was transferred from the BoA 8965 Account to the BoA 1812 Account, and from in or about December 2004 through in or about May 2011, more than $4.3 million was transferred back from the BoA 1812 Account to the BoA 8965 Account.

5.   **ACCOUNT NUMBER 4032028150, HELD IN THE NAME OF KAVERI INTERNATIONAL INC D/B/A MCCREADE INFORMATION TECHNOLOGY (the "BoA 8150 Account")**

24.      On or about May 26, 2011, pursuant to a request from the USAO, officials at Bank of America froze the assets in the BoA 8150 Account, which is held in the name of Kaveri International Inc d/b/a McCreade Information Technology.  As of that date, the balance in the account, according to a representative of Bank of America, was $35,030.69.

25.      The BoA 8150 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

a.      From in or about January 2004 through in or about March 2011, the BoA 8150 Account received more than $13.8 million from TECHNODYNE LLC, as follows:

1.      Approximately $879,000 was transferred from the BoA 4400 Account, referenced above;

2.      More than $1.9 million was transferred from the BoA 1812 Account, referenced above;

3.      Approximately $315,000 was transferred from the BoA 1820 Account, referenced above;

4. More than $2.1 million was transferred from the Capital One 9710 Account, referenced below;

5. More than $3.5 million was transferred from the Capital One 1008 Account, referenced below; and

6. More than $5 million was transferred from two additional Capital One bank accounts held by Technodyne.

b. From in or about April 2004 through in or about June 2009, more than $2 million was wired from the BoA 8150 Account, through approximately 28 separate wire transfers, to bank accounts in India held by Srihari.

c. From in or about May 2005 through in or about September 2005, approximately $425,000 was transferred from the BoA 8150 Account, through 5 separate wire transfers, to a bank account in India held by McCreade.

d. From in or about February 2009 through in or about March 2009, more than $450,000 was transferred from the BoA 8150 Account to a bank account held by Impact.

e. From in or about September 2008 through in or about August 2010, approximately $390,000 was transferred from the BoA 8150 Account to a bank account held by Padma Allen's mother (the "PNC 9866 Account," referenced below).

f. From in or about September 2005 through in or about September 2007, more than $250,000 was paid from the BoA 8150 Account to Countrywide Mortgage, for the 109 Shearwater Court Property and the 8018 Brittany Drive Property, referenced below.

g. From in or about August 2005 through in or about November 2007, more than $68,000 was paid from the BoA 8150 Account as property management fees for

the 109 Shearwater Court Property, the 8018 Brittany Drive Property, and the 30 Freedom Way Property, referenced below.

       h.     In or about March 2005, approximately $1,600 was transferred from the BoA 8150 Account to a bank account held by Gerard Denault's father.

    **6.   ACCOUNT NUMBER 4032023159, HELD IN THE NAME OF PADMA S. ALLEN OR VENKATAPPA R. ALLEN (the "BoA 3159 Account")**

       26.    On or about May 26, 2011, pursuant to a request from the USAO, officials at Bank of America froze the assets in the BoA 3159 Account, which is held in the name of PADMA S. ALLEN or VENKATAPPA R. ALLEN.  As of that date, the balance in the account, according to a representative of Bank of America, was $361,535.92.

       27.    The BoA 3159 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

       a.     From in or about January 2004 through in or about May 2011, the BoA 3159 Account received more than $4.8 million from Technodyne.

       b.     From in or about January 2004 through in or about April 2009, more than $938,000 was transferred from the BoA 3159 Account to Countrywide Mortgage, for the following properties, listed below: 109 Shearwater Court Property, the 8018 Brittany Drive Property, the 30 Freedom Way Property, the 595 Valley Road Property, the 1480 Ratzer Road Property and the 6 Little Place Property.

       c.     From in or about June 2005 through in or about May 2011, more than $1 million was paid from the BoA 3159 Account for, upon information and belief, the purchases of and mortgage payments for the 109 Shearwater Court Property, the 8018 Brittany

Drive Property, the 30 Freedom Way Property, the 595 Valley Road Property, the 1480 Ratzer Road Property and the 6 Little Place Property.

        d.      From in or about May 2009 through in or about September 2009, approximately $45,000 was transferred from the BoA 3159 Account to an account at Fidelity in the name of Padma S. Allen and Reddy V. Allen, (the "Fidelity 4634 Account," referenced below).

        e.      In or about May 2005, more than $200,000 was transferred from the BoA 3159 Account to trust accounts to be used for the purchases of the 30 Freedom Way Property, the 109 Shearwater Court Property, and the 8018 Brittany Drive Property.

        f.      From in or about September 2005 through in or about January 2011, more than $90,000 was paid from the BoA 3159 Account for condominium association dues and management fees for the 8018 Brittany Drive Property, the 30 Freedom Way Property, and the 109 Shearwater Court Property.

## II. Accounts at Capital One

**7.  ACCOUNT NUMBER 5314001008, HELD IN THE NAME OF TECHNODYNE LLC (the "Capital One 1008 Account")**

        28.      On or about May 26, 2011, pursuant to a request from the USAO, officials at Bank of America froze the assets in the Capital One 1008 Account, which is held in the name of TECHNODYNE LLC.  As of that date, the balance in the account, according to a representative of Capital One, was $40,190.09.

        29.      The Capital One 1008 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

a.    From in or about January 2008 through in or about May 2011, the Capital One 1008 Account received more than $201 million from SAIC.

b.    From in or about December 2005 through in or about May 2011, more than $25 million was transferred from the Capital One 1008 Account to bank accounts in India held by McCreade.

c.    From in or about October 2005 through in or about March 2011, more than $3.5 million was transferred from the Capital One 1008 Account to a bank account held by Kaveri.

d.    In or about December 2005, more than $80,000 was transferred from the Capital One 1008 Account to a bank account held by Impact.

e.    From in or about December 2007 through in or about March 2009, more than $24 million was transferred from the Capital One 1008 Account to a bank account at Capital One held by Technodyne (the "Capital One 9710 Account," referenced below).

## 8.  ACCOUNT NUMBER 4244009710, HELD IN THE NAME OF TECHNODYNE LLC (the "Capital One 9710 Account")

30.    On or about May 26, 2011, pursuant to a request from the USAO, officials at Bank of America froze the assets in the Capital One 9710 Account, which is held in the name of TECHNODYNE LLC.  As of that date, the balance in the account, according to a representative of Capital One, was $4,580.67.

31.    The Capital One 9710 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

        a.      From in or about December 2007 through in or about May 2011, the Capital One 9710 Account received more than $24 million from the Capital One 1008 Account, which had received more than $201 million from SAIC.

        b.      From in or about February 2008 through in or about November 2008, more than $5.7 million was wired from the Capital One 9710 Account, through approximately 16 separate wire transfers, to bank accounts in India held by McCreade.

        c.      From in or about December 2007 through in or about July 2010, more than $2.1 million was transferred from the Capital One 9710 Account to a bank account held by Kaveri.

        d.      From in or about January 2008 through in or about April 2011, approximately $600,000 was transferred from the Capital One 9710 Account to a bank account held by Impact.

        e.      From in or about January 2008 through in or about July 2010, approximately $770,000 was transferred from the Capital One 9710 Account to the BoA 3159 Account, held by Reddy Allen and Padma Allen.

        f.      From in or about February 2008 through in or about August 2008, more than $8.8 million was transferred from the Capital One 9710 Account to accounts held by DAS.

        g.      From in or about February 2008 through in or about February 2009, more than $3.7 million was transferred from the Capital One 9710 Account to accounts held by Prime View.

9.   **ACCOUNT NUMBER 4244009736, HELD IN THE NAME OF TECHNODYNE LLC (the "Capital One 9736 Account")**

32.    On or about May 26, 2011, pursuant to a request from the USAO, officials at Bank of America froze the assets in the Capital One 9736 Account, which is held in the name of TECHNODYNE LLC.  As of that date, the balance in the account, according to a representative of Capital One, was $5,622.48.

33.    The Capital One 9736 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

a.    From in or about July 2008 through in or about May 2011, the Capital One 9736 Account received more than $98.4 million from the Capital One 1008 Account, which had received more than $201 million from SAIC.

b.    From in or about September 2008 through in or about October 2010, more than $30 million was transferred from the Capital One 9736 Account to accounts held by DAS.

c.    From in or about September 2008 through in or about November 2010, more than $13.1 million was transferred from the Capital One 9736 Account to accounts held by Prime View.

d.    In or about January 2009, approximately $10,000 was transferred from the Capital One 9736 Account to an account at the State Bank of India held in the name of Technodyne (the "State Bank of India 0001 Account," referenced below).

e.      In or about May 2009, approximately $10,000 was transferred from the Capital One 9736 Account to an account at HSBC held in the name of Technodyne University (the "HSBC 4952 Account," referenced below).

f.      From in or about September 2008 through in or about March 2011, more than $1.2 million was transferred from the Capital One 9736 Account to Reddy Allen and Padma Allen.

### III. Accounts at Fidelity

### 10. ACCOUNT NUMBER X24-994634, HELD IN THE NAME OF PADMA S. ALLEN AND REDDY V. ALLEN (the "Fidelity 4634 Account")

34.      On or about May 26, 2011, pursuant to a request from the USAO, officials at Fidelity froze the assets in the Fidelity 4634 Account, which is held in the name of PADMA S. ALLEN AND REDDY V. ALLEN.  As of that date, the balance in the account, according to a representative of Fidelity, was $45,055.59.

35.      The Fidelity 4634 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

a.      From in or about May 2009 through in or about September 2009, the Fidelity 4634 Account received approximately $45,000 from the BoA 3159 Account, which received deposits totaling more than $3.6 million from Technodyne.

### IV. Accounts at HSBC

### 11. ACCOUNT NUMBER 048895270, HELD IN THE NAME OF TECHNODYNE LLC (the "HSBC 5270 Account")

36.      On or about May 26, 2011, pursuant to a request from the USAO, officials at Fidelity froze the assets in the HSBC 5270 Account, which is held in the name of

TECHNODYNE LLC.  As of that date, the balance in the account, according to a representative of HSBC, was $582,647.

37.     The HSBC 5270 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

a.     From in or about September 2008 through in or about March 2009, the HSBC 5270 Account received approximately $500,000 from the Capital One 9736 Account, which, in turn, received transfers totaling more than $98.4 million from the Capital One 1008 Account, which received more than $201 million from SAIC.

## 12. ACCOUNT NUMBER 048884952, HELD IN THE NAME OF TECHNODYNE UNIVERSITY LLC (the "HSBC 4952 Account")

38.     On or about May 26, 2011, pursuant to a request from the USAO, officials at Fidelity froze the assets in the HSBC 4952 Account, which is held in the name of TECHNODYNE UNIVERSITY LLC.  As of that date, the balance in the account, according to a representative of HSBC, was $363,136.41.

39.     The HSBC 4952 Account received and was used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the following:

a.     In or about May 2009, the HSBC 4952 Account received approximately $10,000 from the Capital One 9736 Account, which, in turn, received transfers totaling more than $98.4 million from the Capital One 1008 Account, which received more than $201 million from SAIC.

### 13. ACCOUNT NUMBER 048895300, HELD IN THE NAME OF REDDY V. ALLEN and PADMA ALLEN (the "HSBC 5300 Account"); and
### 14. ACCOUNT NUMBER 048499439, HELD IN THE NAME OF REDDY ALLEN IN TRUST FOR RYAN ALLEN (the "HSBC 9439 Account")

40.     On or about May 26, 2011, pursuant to requests from the USAO, officials at Fidelity froze the assets in the HSBC 5300 Account, which is held in the name of REDDY V. ALLEN and PADMA ALLEN; and froze the assets in the HSBC 9439 Account, which is held in the name of REDDY ALLEN IN TRUST FOR RYAN ALLEN.  As of that date, according to a representative of HSBC, the balance in the HSBC 5300 Account was $250,071.95 and the balance in the HSBC 9439 Account was $10,053.53.

41.     The HSBC 5300 Account and the HSBC 9439 Account received and were used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment. Facilitating transactions include the following:

a.     From in or about September 2008 through in or about March 2009, the HSBC 5300 Account received approximately $250,000 from the Capital One 9736 Account, which, in turn, received transfers totaling more than $98.4 million from the Capital One 1008 Account, which received more than $201 million from SAIC.

b.     In or about May 2009, the HSBC 9439 Account received deposits totaling approximately $10,000 from the BoA 3159 Account, referenced above.

### V. Accounts at PNC Bank

### 15. ACCOUNT NUMBER 8019108309, HELD IN THE NAME OF PADMA SACHI ALLEN (the "PNC 8309 Account"); and
### 16. ACCOUNT NUMBER 8019112957, HELD IN THE NAME OF PADMA SACHI ALLEN (the "PNC 2957 Account")

42.     On or about May 26, 2011, pursuant to requests from the USAO, officials at PNC Bank froze the assets in the PNC 8309 Account, which is held in the name of PADMA

SACHI ALLEN; and froze the assets in the PNC 2957 Account, which is held in the name of

PADMA SACHI ALLEN. As of that date, according to a representative of PNC Bank, the

balance in the 8309 Account was $3,235.16 and the balance in the 2957 Account was

$253,526.10.

        43.    The PNC 8309 Account and the PNC 2957 Account received and were

used to launder the proceeds of the fraud schemes set forth in the Superseding Indictment.

Facilitating transactions include the following:

        a.    From in or about January 2004 through in or about March 2004,

the PNC 8309 Account received approximately $25,000 from the BoA 4400 Account, referenced

above.

        b.    In or about August 2010, the PNC 2957 Account received deposits

totaling approximately $250,000 from the BoA 9736 Account, referenced above.

### 17. ACCOUNT NUMBER 8020999866, HELD IN THE NAME OF SOUNDARYAMMA CHENNAREDDY (the "PNC 9866 Account")

        44.    On or about May 26, 2011, pursuant to a request from the USAO, officials

at PNC Bank froze the assets in the PNC 9866 Account, which is held in the name of

SOUNDARYAMMA CHENNAREDDY. As of that date, the balance in the account, according

to a representative of HSBC, was $175,863.64.

        45.    The PNC 9866 Account received and was used to launder the proceeds of

the fraud schemes set forth in the Superseding Indictment. Facilitating transactions include the

following:

        a.    From in or about September 2008 through in or about August

2010, the PNC 9866 Account received wires totaling approximately $390,000 from Kaveri.

b.      In or about May 2010, the PNC 9866 Account received

approximately $200,000 from Impact.

## V. Accounts at State Bank of India

### 18. ACCOUNT NUMBER 77606828420001, HELD IN THE NAME OF TECHNODYNE LLC (the "SBI 0001 Account")

46.      On or about May 26, 2011, pursuant to a request from the U.S. Attorney's

Office ("USAO"), officials at the State Bank of India froze the assets in the SBI 0001 Account,

which is held in the name of TECHNODYNE LLC.  As of that date, the balance in the account,

according to a representative of the State Bank of India, was $12,923.00.

47.      The SBI 0001 Account received and was used to launder the proceeds of

the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions include the

following:

a.      In or about September 2008, the SBI 0001 Account received

approximately $10,000 from the Capital One 9736 Account, referenced above.

## VI. Accounts at TD Bank

### 19. ACCOUNT NUMBER 4733278877, HELD IN THE NAME OF PADMA ALLEN (the "TD Bank 8877 Account")

48.      On or about May 26, 2011, pursuant to a request from the USAO, officials

at TD Bank froze the assets in the TD Bank 8877 Account, which is held in the name of

PADMA ALLEN.  As of that date, the balance in the account, according to a representative of

TD Bank, was $251,286.06.

49.      The TD Bank 8877 Account received and was used to launder the

proceeds of the fraud schemes set forth in the Superseding Indictment.  Facilitating transactions

include the following:

a.     In or about August 2010, the TD Bank 8877 Account received

approximately $250,000 from the Capital One 9736 Account, referenced above.

## THE DEFENDANT PROPERTIES

1.     6 LITTLE PLACE, WAYNE, NEW JERSEY 07470
       (the "6 Little Place Property")

50.     The 6 Little Place Property is a single family residence, located on BBL

2104/79 in Wayne, New Jersey 07470.  It was purchased on or about October 9, 2001 by Reddy

and Padma Allen for $780,834, and real estate records indicate it is currently owned by them.

51.     Funds from the BoA 3159 and Capital One 9736 Accounts, which

accounts were among those used to launder the proceeds of the fraud schemes set forth above

and in the Superseding Indictment, were used to pay for the purchase, mortgage, maintenance

and other costs associated with the 6 Little Place Property, as follows:

a.     From in or about January 2004 through in or about May 2011,

$626,629.49 was transferred from the BoA 3159 Account to pay for the mortgage on the 6 Little

Place Property;

b.     From in or about January 2010 to in or about March 2011, $4,091

was transferred from the Capital One 9736 Account to pay for landscaping in and around the 6

Little Place Property;

c.     From in or about June 2005 through May 2011, approximately

$18,000 was transferred from the the BoA 3159 Account to pay for landscaping in and around

the 6 Little Place Property;

d.       From in or about April 2004 through in or about February 2009, approximately $11,375 was transferred from the BoA 3159 Account to pay for utilities associated with the 6 Little Place Property; and

e.       From in or about April 2006 through in or about January 2010, approximately $4,250 was transferred from the BoA 3159 to pay for sewer costs associated with the 6 Little Place Property.

**2.     109 EAST SHEARWATER COURT, # 12, JERSEY CITY, NEW JERSEY 07302 (the "109 East Shearwater Court Property")**

52.     The 109 East Shearwater Court Property, which includes a parking unit, is a condominium located on BBL 1497.18/10912&19 in Jersey City, New Jersey 07302. It was purchased on or about May 27, 2005 by Reddy and Padma Allen for approximately $995,000, and real estate records indicate the property is currently owned by them.

53.     Funds from the BoA 3159 and 8150 Accounts, which accounts were among those used to launder the proceeds of the fraud schemes set forth above and in the Superseding Indictment, were used to pay for the purchase, mortgage, maintenance and other costs associated with the 109 East Shearwater Court Property, as follows:

a.       From in or about June 2005 through May 2011, more than $270,000 was transferred from the BoA 3159 Account to pay for the purchase of and mortgage for the 109 East Shearwater Court Property;

b.       From in or about September 2005 through in or about September 2007, more than $180,000 was transferred from the BoA 8150 Account to pay for the purchase and mortgage of the 109 East Shearwater Court Property;

24

    c.      In or about May and June of 2005, more than $216,000 was transferred from the BoA 3159 Account to pay for a down payment on the 109 East Shearwater Court Property;

    d.      From in or about August 2005 through in or about November 2007, more than $55,000 was transferred from the BoA 8150 Account, and from in or about September 2005 through in or about May 2011, more than $75,000 was transferred from the BoA 3159 Account to pay condominium association fees for both the 109 East Shearwater Court Property and the 30 Freedom Way Property, also a defendant, referenced below.  (Association fees for both of these defendant Properties were paid together and the payments do not specify the amounts for each.)

### 3.    8018 BRITTANY DRIVE, WAYNE TOWNSHIP, NEW JERSEY 07470 (the "8018 Brittany Drive Property")

54.    The 8018 Brittany Drive Property is a condominium, located on BBL 3200/11C8018 in Wayne Township, New Jersey 07470.  It was purchased on or about July 25, 2005 by Reddy and Padma Allen for $439,000, and real estate records indicate the property is currently owned by them.

55.    Funds from the BoA 3159 and 8150 Accounts, which accounts were among those used to launder the proceeds of the fraud schemes set forth above and in the Superseding Indictment, were used to pay for the mortgage on the 8018 Brittany Drive Property, as follows:

    a.      From in or about October 2007 through in or about May 2011, approximately $127,000 was transferred from the BoA 3159 Account to pay for the mortgage on the 8018 Brittany Drive Property;

b.      From in or about September 2005 through in or about September 2007, more than $72,000 was transferred from the BoA 8150 Account to pay for the mortgage on the 8018 Brittany Drive Property; and

c.      From in or about May 2005 through in or about July 2005, more than $120,000 was transferred from the BoA 3159 Account to pay for the down payment on the 8018 Brittany Drive Property.

### 4.      595 VALLEY ROAD, WAYNE, NEW JERSEY (the "595 Valley Road Property")

56.     The 595 Valley Road Property is a single family residence, located on BBL 1809/7 in Wayne, New Jersey 07470.  It was purchased on or about October 12, 2005 by Reddy and Padma Allen for approximately $529,000, and real estate records indicate the property is currently owned by them.

57.     Funds from the BoA 3159 Account, the TD Bank 1925 Account, and the Capital One 9736 Account, which were among those used to launder the proceeds of the fraud schemes set forth above and in the Superseding Indictment, were used to pay for the purchase, mortgage, maintenance, and other costs associated with the 595 Valley Road Property, as follows:

a.      From in or about December 2005 through May 2011, more than $241,000 was transferred from the BoA 3159 Account to pay for the mortgage on the 595 Valley Road Property;

b.      In or about October 2005, $65,000 was transferred from the BoA 3159 Account to pay for a down payment on the 595 Valley Road Property;

26

c.      In or about September 2005, $51,900 was transferred from the TD Bank 1925 Account to pay for a down payment on the 595 Valley Road Property;

d.      From in or about December 2008 through in or about March 2011, approximately $5,420 was transferred from the Capital One 9736 Account to pay for landscaping in and around the 595 Valley Road Property; and

e.      In or about March 2011, approximately $9,679 was transferred from the Capital One 9736 Account to pay for a rental expense associated with 595 Valley Road Property.

**5.      30 FREEDOM WAY, #301, JERSEY CITY, NEW JERSEY 07305 (the "30 Freedom Way Property")**

58.     The 30 Freedom Way Property is a condominium located on BBL 1500/67C301D in Jersey City, New Jersey 07305.  It was purchased on or about April 4, 2006 by Reddy and Padma Allen for $605,000, and real estate records indicate the property is currently owned by them.

59.     Funds from the BoA 3159 and 8150 Accounts, which were among those used to launder the proceeds of the fraud schemes set forth above and in the Superseding Indictment, were used to pay for the purchase, mortgage, maintenance, and other costs associated with the 30 Freedom Way Property, as follows:

a.      From in or about June 2006 through in or about May 2011, more than $214,000 was transferred from the BoA 3159 Account to pay for the purchase of and mortgage on the 30 Freedom Way Property;

b.      From in or about May 2005 through in or about April 2006, more than $142,000 was transferred from the BoA 3159 Account to make down payments for the 30 Freedom Way Property;

c.      In or about August 2006, approximately $1,900 was transferred from the BoA 3159 Account to pay for taxes associated with the 30 Freedom Way Property; and

d.      From in or about August 2005 through in or about November 2007, approximately $55,000 was transferred from the BoA 8150 Account, and from in or about September 2005 through in or about May 2011, more than $75,000 was transferred from the BoA 3159 Account to pay condominium association fees for both the 30 Freedom Way Property and the 109 East Shearwater Court Property, referenced above.

6.      **1480 RATZER ROAD, WAYNE, NEW JERSEY 07470 (the "1480 Ratzer Road Property")**

60.     The 1480 Ratzer Road Property is a single family residence, located on BBL 2104/81 in Wayne, New Jersey 07470.  It was purchased on or about June 30, 2008 by Reddy and Padma Allen for $510,000 and real estate records indicate the property is currently owned by them.

61.     Funds from the BoA 3159 and Capital One 9736 Accounts, which were among those used to launder the proceeds of the fraud schemes set forth above and in the Superseding Indictment, were used to pay for the purchase, mortgage, maintenance, and other costs associated with the 1480 Ratzer Way Property, as follows:

a.      From in or about August 2008 through in or about May 2011, more than $141,000 was transferred from the BoA 3159 Account to pay for the purchase of and mortgage on the 1480 Ratzer Road Property;

28

b.      In or about June 2008, more than $146,000 was transferred from the BoA 3159 Account to pay for a down payment on the purchase of the 1480 Ratzer Road Property; and

c.      From in or about September 2008 through in or about December 2008, approximately $45,000 was transferred from the BoA 3159 Account to pay for construction expenses associated with the 1480 Ratzer Road Property.

### 7.      6 ARIEL COURT, PORT WASHINGTON, NEW YORK 11050 (the "6 Ariel Court Property")

62.      The 6 Ariel Court Property is a residence located on BBL 04-B-0434-0 in Port Washington, New York 11050.  Upon information and belief, on or about April 27, 2000, the lot at the 6 Ariel Court Property was purchased by Purnachandra/Ushachandra Aramalla for $3.5 million.  Purnachandra and Ushachandra Aramalla are, upon information and belief, close relatives of Reddy Allen.

63.      From in or about July 2010 through in or about August 2010, eight wires totaling $800,000 were transmitted from the BoA 1820 Account, held by Technodyne, to an account at Chase Bank held by Purnachandra and Ushachandra Aramalla.  Of these payments, approximately $750,000 was used, upon information and belief and based on the timing of the wire transfers, to pay for the construction of a house on the 6 Ariel Court Property.

64.      On or about July 16, 2010, $200,000 was wired from the BoA 8150 Account to an account at Chase Bank held in the name of Fair Deal Pharmacy, Inc., a business owned by Purnachandra Aramalla.  On or about July 20, 2010, these funds were transferred to a bank account in the name of Purnachandra Aramalla, and were then used, upon information and

belief and based on the timing of the transfers, to pay for the construction of a house on the 6 Ariel Court Property.

## CLAIMS FOR FORFEITURE

### First Claim for Forfeiture – Proceeds Traceable to Wire Fraud, Travel Act and Bribery Violations (18 U.S.C. § 981(a)(1)(c))

65. Paragraphs 1 through 64 of this Complaint are repeated and realleged as if fully set forth herein.

66. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

67. Section 1956(c)(7)(A) of Title 18, United States Code, in turn provides that the term "specified unlawful activity" includes, among other things, "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under [31 U.S.C. §§ 5311 et seq.]." The list of offenses identified in 18 U.S.C. § 1961(1)(B) are thus included within "any act or activity constituting an offense listed in section 1961(1) of this title." Section 1961(1)(B) includes "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1343 (relating to wire fraud), . . . [and] section 1952 (relating to racketeering)." Here, the subject offenses included wire fraud and Travel Act violations, in violation of 18 U.S.C. §§ 1343 and 1952.

68. Section 1956(c)(7)(D) of Title 18, United States Code, moreover, provides that the term "specified unlawful activity" includes, among other things, "an offense under . . . section 666 (relating to theft or bribery concerning programs receiving Federal funds)."

69.     In addition, Title 18, United States Code, Section 984 provides in relevant part that:

(a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals –

(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

(b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

70.     Because the DEFENDANT ACCOUNTS and the DEFENDANT PROPERTIES constitute or were derived from proceeds traceable to wire fraud, bribery and Travel Act violations, the DEFENDANT ACCOUNTS and the DEFENDANT PROPERTIES are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**Second Claim for Forfeiture – Property Involved In and Traceable to Money Laundering Transactions**
**(18 U.S.C. § 981(a)(1)(A))**

71.     Paragraphs 1 through 70 of this Complaint are repeated and realleged as if fully set forth herein.

72.     Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation

31

of . . . section 1956 or 1957 of this title [relating to money laundering], or any property traceable to such property."

73.    Title 18, United States Code, Section 1956(a) provides criminal penalties for:

(a)(1) [w]hoever knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity –

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

. . .

(B) knowing that the transaction is designed in whole or in part --

(i) to conceal or disguise the nature, the location, the source of ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law . . . .

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--

(A) with the intent to promote the carrying on of specified unlawful activity; or

(B) knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part--

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of

specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State
or Federal law.

74.    In addition, Section 1956(h) provides, in part, that "[a]ny person who

conspires to commit any offense defined in this section or section 1957 shall be subject to the

same penalties as those prescribed for the offense the commission of which was the object of the

conspiracy."

75.    18 U.S.C. § 1957 provides in relevant part that:

Whoever . . . knowingly engages or attempts to engage in a
monetary transaction in criminally derived property of a value
greater than $10,000 and is derived from specified unlawful
activity, shall be punished as provided in subsection (b).

76.    "Monetary transactions" is defined in 18 U.S.C. § 1957(f)(1) as the

"deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce of

funds . . . by, through, or to a financial institution . . . including any transaction that would be a

financial transaction under section 1956(c)(4)(B) of this title . . . ."

77.    "Criminally derived property" is defined in 18 U.S.C. § 1957(f)(2) as "any

property constituting, or derived from, proceeds obtained from a criminal offense."

78.    "Specified unlawful activity" is defined in 18 U.S.C. § 1957(f)(3) as

having the same meaning as that term has in 18 U.S.C. § 1956.  As noted above, the term

"specified unlawful activity," as defined in Section 1956, includes violations of IEEPA.

79.    The term "specified unlawful activity" further includes the felonious

manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a

controlled substance or listed chemical (as defined in section 102 of the Controlled Substances

Act), punishable under any law of the United States.

80.     In addition, the term "financial transaction" is defined in 18 U.S.C. § 1956(c)(4), and includes "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments . . . ."

81.     Because the DEFENDANT ACCOUNTS and the DEFENDANT PROPERTIES constitute accounts and properties involved in money laundering transactions and attempted money laundering transactions in violation of Sections 1956 and 1957, they are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

82.     Because Reddy Allen and Padma Allen are fugitives from justice, the Government intends to seek forfeiture of the DEFENDANT ACCOUNTS and the DEFENDANT PROPERTIES pursuant to the Fugitive Disentitlement Statute, 28 U.S.C. § 2466.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the DEFENDANT ACCOUNTS and DEFENDANT PROPERTIES and that all persons having an interest in the DEFENDANT ACCOUNTS and DEFENDANT PROPERTIES be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the DEFENDANT ACCOUNTS and DEFENDANT PROPERTIES to the United States of America for disposition according to law and that this Court grant plaintiff such further relief as this Court may deem just and proper together with costs and disbursements in this action.

Dated:  New York, New York
        March 13, 2012

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____
Andrew D. Goldstein
Howard S. Master
Sharon Cohen Levin
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
(212) 637-1559

<u>VERIFICATION</u>

STATE OF NEW YORK                              )
COUNTY OF NEW YORK                          :
SOUTHERN DISTRICT OF NEW YORK   )

      ROBERT RYAN, being duly sworn, deposes and says that he is a Criminal

Investigator with the United States Attorney's Office for the Southern District of New York

("USAO—SDNY"); that he has read the foregoing complaint and knows the contents thereof;

and that the same is true to the best of his knowledge, information and belief.

      The sources of deponent's information and the ground of his belief are

conversations with other law enforcement officers and others, official records and files of the

New York City Department of Investigation, and the United States Government, and information

obtained directly by deponent during an investigation of alleged violations of Title 18, United

States Code.

 

_____
ROBERT RYAN
Criminal Investigator
USAO—SDNY

Sworn to before me this
13th day of March 2012

_____
Notary Public

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires _May 8, 2014_

36

## ATTACHMENT A

1. All funds and other property on deposit at Bank of America in account number 4729004400, held in the name of Technodyne LLC, and all property traceable thereto;

2. All funds and other property on deposit at Bank of America in account number 9505241812, held in the name of Technodyne LLC, and all property traceable thereto;

3. All funds and other property on deposit at Bank of America in account number 9505241820, held in the name of Technodyne LLC, and all property traceable thereto;

4. All funds and other property on deposit at Bank of America in account number 9476948965, held in the name of Technodyne LLC, and all property traceable thereto;

5. All funds and other property on deposit at Bank of America in account number 4032028150, held in the name of Kaveri International Inc d/b/a McCreade Information Technology, and all property traceable thereto;

6. All funds and other property on deposit at Bank of America in account number 4032023159, held in the name of Padma S. Allen or Venkatappa R. Allen, and all property traceable thereto;

7. All funds and other property on deposit at Capital One Bank in account number 5314001008, held in the name of Technodyne LLC, and all property traceable thereto;

8. All funds and other property on deposit at Capital One Bank in account number 4244009710, held in the name of Technodyne LLC, and all property traceable thereto;

9. All funds and other property on deposit at Capital One Bank in account number 4244009736, held in the name of Technodyne LLC, and all property traceable thereto;

10. All funds and other property on deposit at Fidelity Bank in account number X24-994634, held in the name of Padma S. Allen and Reddy V. Allen, and all property traceable thereto;

11. All funds and other property on deposit at HSBC Bank in account number 048895270, held in the name of Technodyne LLC, and all property traceable thereto;

12. All funds and other property on deposit at HSBC Bank in account number 048884952, held in the name of Technodyne University LLC, and all property traceable thereto;

13. All funds and other property on deposit at HSBC Bank in account number 048895300, held in the name of Padma S. Allen and Reddy V. Allen, and all property traceable thereto;

i

14. All funds and other property on deposit at HSBC Bank in account number 048499439, held in the name of Reddy V. Allen in Trust for Ryan Allen, and all property traceable thereto;

15. All funds and other property on deposit at PNC Bank in account number 8019108309, held in the name of Padma Sachi Allen, and all property traceable thereto;

16. All funds and other property on deposit at PNC Bank in account number 8019112957, held in the name of Padma Sachi Allen, and all property traceable thereto;

17. All funds and other property on deposit at PNC Bank in account number 8020999866, held in the name of Soundaryamma Chennareddy, and all property traceable thereto;

18. All funds and other property on deposit at State Bank of India in account number 77606828420001, held in the name of Technodyne LLC, and all property traceable thereto; and

19. All funds and other property on deposit at TD Bank in account number 4733278877, held in the name of Padma Allen, and all property traceable thereto.

## ATTACHMENT B

1.  All right, title and interest in the real property located at 6 Little Place, Wayne, New Jersey 07470, with all improvements, attachments and easements thereon;

2.  All right, title and interest in the real property located at 109 East Shearwater Ct., No. 12, Jersey City, New Jersey 07302, with all improvements, attachments and easements thereon;

3.  All right, title and interest in the real property located at 8018 Brittany Drive, Wayne Township, New Jersey 07470, with all improvements, attachments and easements thereon;

4.  All right, title and interest in the real property located at 595 Valley Road, Wayne, New Jersey 07470, with all improvements, attachments and easements thereon;

5.  All right, title and interest in the real property located at 30 Freedom Way, No. 301, Jersey City, New Jersey 07305, with all improvements, attachments and easements thereon;

6.  All right, title and interest in the real property located at 1480 Ratzer Road, Wayne, New Jersey 07470, with all improvements, attachments and easements thereon; and

7.  All right, title and interest in the real property located at 6 Ariel Court, Port Washington, New York 11050, with all improvements, attachments and easements thereon.