CAITUSAA

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4                Plaintiff,

 5         v.                                12 CV 1866 (TPG)

 6   ALL FUNDS AND OTHER PROPERTY
     ON DEPOSIT IN THE NINETEEN
 7   BANK ACCOUNTS LISTED ON
     ATTACHMENT A, AND ALL PROPERTY
 8   TRACEABLE THERETO, et al.,

 9                Defendants.

10   ------------------------------x
                                             New York, N.Y.
11                                           October 18, 2012
                                             4:00 p.m.
12   Before:

13                 HON. THOMAS P. GRIESA,

14                                           District Judge

15                        APPEARANCES

16   PREET BHARARA
          United States Attorney for the
17        Southern District of New York
     ANDREW GOLDSTEIN
18   HOWARD MASTER
          Assistant United States Attorneys
19
     KASOWITZ, BENSON, TORRES & FRIEDMAN
20        Attorneys for Claimant Kasowitz
     JOSHUA SIEGEL
21
     COBURN & GREENBAUM
22        Attorneys for Claimants Allen, Technodyne
     BARRY COBURN
23
     THOMPKINS, McGUIRE, WACHENFELD & BARRY
24        Attorneys for Claimant Bank of America
     MARC PAKRUL
25
```

       (In open court)

       MR. COBURN:  Your Honor, just to make sure that, as your Honor's clerk just stated, this is on the record, I did and do expressly consent to the notion of starting my argument which your Honor was kind enough to let me do before the court reporter arrived.

       For summary, I spoke to the issue of what is the legal issue here turning on the phrase, "In order to avoid criminal prosecution of the statute, the requirement of proof analogous to specific intent and the application of the summary judgment standard under Rule 56 in the absence of material fact."

       Turning then to the circumstances themselves, the factual circumstances that are presented for your Honor, I -- and like I said, your Honor, I will be very brief about this, in compliance with what your Honor stated at the beginning, but they are as follows from my point of view:  First, there's the question of the timing of the Allens departure from the jurisdiction.  It appears to be uncontested that Mrs. Allen left in February 2011 and Mr. Allen left in March 2011.  There's no evidence to the contrary.  That evidence is elicited from their declarations.  The government does not appear to dispute it in their papers, and they submitted no countervailing evidence.  So it is established that they left on those dates.

       THE COURT:  And they have not returned, right?

CAITUSAA

1              MR. COBURN:  Correct, they have not returned.
2              THE COURT:  There was an indictment, right?
3              MR. COBURN:  Indeed, subsequently there was an
4     indictment.
5              THE COURT:  When was the indictment?
6              MR. COBURN:  In June, your Honor.
7              May I continue, your Honor?
8              THE COURT:  Please.
9              MR. COBURN:  The government asserts in its
10    paperwork -- and this is an assertion which is made
11    particularly, if I remember correctly, in its reply
12    memorandum -- that the Allens fled to India while on subpoena.
13             My understanding of the facts -- and this is really
14    drawn principally from the evidence provided by the government,
15    but I think the Allen's declarations are consistent with it.
16    The Allens received a subpoena dated December 14, 2010.  The
17    subpoena -- this is a grand jury subpoena, not one subpoena but
18    more than one, several.  They were returnable a month later on
19    January 13, 2011, if I remember correctly.
20             It appears that the Allens did not in fact go into the
21    grand jury, that their appearance before the grand jury was
22    excused by the government, and instead, about two weeks hence,
23    on January 27, 2011, on or about the government says
24    January 27, 2011, the Allens had an informal meeting with the
25    prosecutors.

1            Now the prosecutors --

2            THE COURT:  When was the informal meeting?

3            MR. COBURN:  Sorry, your Honor?

4            THE COURT:  When was the informal meeting?

5            MR. COBURN:  According to the government's papers, on
6     or about January 27, 2011.

7            And the government is dissatisfied with what the
8     Allens said during this meeting.  The Allens said they were
9     completely forthcoming.  The Allens say the only restriction
10    and what they could say was subject matter restrictions that
11    had been agreed upon by their counsel and the government in
12    advance.  The government disputes this.  Regardless, a meeting
13    did occur, and it appears that the subpoena then, which had
14    been returnable for a grand jury appearance on January 13, a
15    date that had already passed, that that subpoena essentially
16    was of no further force and effect as far as I can tell from
17    this record.

18           And then, like I said a moment ago, your Honor, the
19    Allens left after that.  This meeting like I just described was
20    in January 2011.  The Allens left in February and March 2011
21    respectfully, and then there was another grand jury subpoena
22    issued in April, mid April 2011 to the Allens, in which the
23    government recites that they received a letter from one of
24    Mr. Siegel's colleagues at Kasowitz Benson indicating that the
25    Allens were going to take the Fifth.

CAITUSAA

1            The reasons these dates are important, it is my
2    submission, your Honor, is as far as I could tell from this
3    factual record, the Allens -- "fled" is a loaded word the
4    government submits in its advocacy, but the Allens did not
5    leave while under subpoena, as far as I could tell.  They
6    received the subpoena, but they were not under subpoena when
7    they left.  Their explanation for why they left is described in
8    great detail in their declarations, I will not impose on the
9    Court's time in repeating that or even summarizing it, but my
10   submission is it's pretty well comprehensive in terms of why
11   they left relating to the fact that they could no longer earn
12   an income.
13            THE COURT:  Did they have a home here?
14            MR. COBURN:  My understanding is, yes, they had a home
15   here, your Honor.
16            THE COURT:  They had a home.
17            MR. COBURN:  They had more than one property here.
18            THE COURT:  Where were their properties?
19            MR. COBURN:  I know -- I apologize to the Court, I
20   don't have detailed knowledge of the location of each of them,
21   but they are detailed in the government's papers and in our
22   notice of claim.
23            THE COURT:  In other words, they lived in this country
24   before they left this country.  They lived here, right?
25            MR. COBURN:  Yes.

Case 1:12-cv-01866-TPG   Document 64   Filed 11/19/12   Page 6 of 12      6
CAITUSAA

1           THE COURT:  They had a home here or maybe more than
2    one home.
3           MR. COBURN:  Yes, indeed.  I don't dispute that, your
4    Honor, nor do they in their declarations.  What their
5    declarations say is that they left in February and March 2011,
6    one after the other, for business purposes, for what was
7    essentially supposed to be an extended routine business trip.
8    And that while they were away, that's late winter and early
9    spring 2011, they continued to cooperate with the government.
10          That's true, apparently that in May they invoked the
11   Fifth with respect to certain documents, but they turned over
12   other documents, according to their declaration.  I don't see
13   that that proposition is disputed.  Moreover, they were asked
14   to transfer $1.9 million out of an account, which they did, and
15   that's not disputed, as far as I know.  So it appears both
16   before and after their departure from the United States they
17   cooperated in the investigation with respect to providing --
18          THE COURT:  But they are not here to answer the
19   indictment.
20          MR. COBURN:  That is correct, your Honor.
21          THE COURT:  That is the crucial thing.  And here are
22   two people who had a home here.  It isn't that they would have
23   to come and stay at the Waldorf Astoria to deal with the
24   indictment, they had a home here, and they could return to that
25   home.  And there's been a lot of time, and I really just don't

(212) 805-0300

CAITUSAA

see that there's any real issue here about the timing.  How could the timing make anything clearer?  They are under criminal investigation, and they were indicted, and people who had been here before suddenly leave and don't return, that's the stark fact.

MR. COBURN:  Well, it is true, your Honor, that there was an investigation.  It is their testimony through their declarations that they did not know that that investigation was focused on them in particular at the time they left.  Certainly they knew after they left that it was focused on them, and like your Honor indicated --

THE COURT:  On a business trip going from February, March 2011.  When is the business trip going to get over with?

MR. COBURN:  Of course, your Honor, their declarations do not suggest that they have been on a business trip from February, March 2011 until now in 2012.

THE COURT:  When are they coming back?

MR. COBURN:  I personally do not have an answer to that question.

THE COURT:  I'm sure you don't, because there's no indication that they intend to come back.  They have plenty of time to come back.

MR. COBURN:  If I could very quickly state this, your Honor, our central point, which I started saying before the court reporter arrived, is that since there is a requirement

1   under the plain language of the statute as interpreted in the
2   DC circuit case on which we relied, the $6 million -- U.S.
3   versus $6 million case, there has to be proof analogous to
4   specific intend, that they left and remained abroad in order to
5   avoid criminal prosecution.
6           My submission to your Honor is that based on a host of
7   circumstances, which if your Honor will allow me, I will
8   continue to talk about, a host of circumstances that the
9   government cannot prove, they cannot achieve the requisite
10  level of proof under a summary judgment standard to suggest
11  there is an absence of material fact as to what their specific
12  intent was, what their motivation was.  They have testified
13  that they left for a business trip and they remain because
14  they're no longer able to earn an income in the United States
15  and their reputations have been tarnished and so on.  And my
16  submission to the Court is that there is not evidence to
17  contradict those assertions, and that all the circumstances do
18  not allow the government to carry its burden under the summary
19  judgment standard.
20          THE COURT:  It seems to me that the circumstantial
21  evidence is so strong.
22          MR. COBURN:  There are some others, which, if your
23  Honor would allow me, I could point out quickly.
24          THE COURT:  Of course.
25          MR. COBURN:  I appreciate that very much.

1          They testified that they left their money in the
2     United States and their kids in the United States, which I
3     submit to your Honor corroborates the notion that they left for
4     business purposes initially.  They left assets here.  They
5     received no evidence, no indication when they left that they
6     were in fact a target of the investigation.  Like I indicated a
7     moment ago, they were asked while away to transfer nearly 2
8     million at the government's request, they did so, they provided
9     more documents to the government.  The government then, in
10    May 2011, froze their assets and subsequently indicted them
11    while they were abroad.  They described in great detail in
12    declarations the nature of the economic dislocation that they
13    suffered as a result from adverse press and frozen assets and
14    so on, and they describe they remain India where they have
15    financial support from relatives, that they were in the United
16    States in early 2011 after other people started being arrested.
17    They explained that with respect to funds that were paid to
18    McCreedy they provided an innocuous rationale for why invoices
19    that were deemed immediately due and owing had not been paid.
20    They did not try to transfer substantial funds in other
21    accounts which have now been frozen.
22         There's an affidavit or a letter, I should say, from a
23    psychologist with respect to one of their daughters in terms of
24    why the daughter should not now be taken out of India because
25    of the emotional dislocation that she has suffered.  And with

1    respect to the other factors that the government relies upon,
2    our meetings with them, the letter that I sent them, and what
3    happened in the Kasowitz civil proceeding we'll just rely on
4    what we stated in our papers with respect to that.  My
5    submission to your Honor is that none of those things prove
6    anything in terms of the Allens' specific intent.
7             So for all those reasons, my submission to the Court,
8    and I appreciate your Honor allowing me to speak to that, I do
9    not believe the government has or can carry the requisite
10   burden, and my submission is that your Honor should not
11   exercise your discretion, and it is a discretionary call, even
12   if all five prongs are demonstrated, your Honor should not
13   exercise your discretion to impose this kind of extremely
14   Draconian measure to impose.
15            THE COURT:  I will put on the record right now my
16   ruling.  It will be a summary ruling and will not be lengthy.
17   The factual materials that are quite fulsome have been
18   furnished to the Court, but the essential facts are that the
19   Allens left the United States, one in February 2011, the other
20   in March 2011.  There was a criminal investigation going on and
21   there was an indictment in June, and they have not returned,
22   despite the fact they had a home here, maybe even two homes,
23   and they have not returned.  And the circumstantial evidence at
24   the very least is overwhelming to support the idea that they
25   had notice or knowledge of the fact that there was a warrant or

Case 1:12-cv-01866-TPG   Document 64   Filed 11/19/12   Page 11 of 12    11
CAITUSAA

process for their apprehension, and they have remained outside of the United States in order to avoid criminal prosecution. And I'm, of course, referring to the requirements of the fugitive disentitlement statute codified at 28 USC 2466.

The Court finds that they purposefully left the jurisdiction of the United States and remained absent from the United States knowing that there was a criminal investigation and knowing that there was an indictment and a warrant for their arrest if they reentered. To say the least, the criminal case is related to the forfeiture action. It is not even contested that they are not in custody in any other jurisdiction. And as I believe I already said, the Allens are deliberately avoiding prosecution by declining to enter or reenter the United States and be subject to the jurisdiction of the United States.

Consequently, the Court finds that the United States government is entitled to forfeiture remedies that are sought in its action, and that the defenses and claims of the Allens are entirely without merit and do not prevent the government from obtaining the relief it seeks.

Now with that, I would like to adjourn, and if there are any other matters pertaining to the Bank of America or the law firm, I think now that the main issues are decided by the Court, you may be able to work out the issues with the other parties. If not, we can have an appropriate proceeding.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

CAITUSAA

1          Thank you.
2          MR. GOLDSTEIN:  Thank you, your Honor.  Just to be
3  clear, I believe your Honor's order that you just stated covers
4  this, but the claims were made not just by the Allens but by
5  the company Technodyne itself.
6          THE COURT:  I stand corrected on that.
7          MR. GOLDSTEIN:  Thank you, your Honor.
8                             o0o